1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
    JOHN T. BROOKS, Cal. Bar No. 167793
3   jbrooks@sheppardmullin.com
    JARED K. LEBEAU, Cal. Bar No. 292742
4   jlebeau@sheppardmullin.com
    MICHAEL BEAN, Cal. Bar No. 264628
5   mbean@sheppardmullin.com
    501 West Broadway, 19th Floor
6   San Diego, California 92101-3598
    Telephone:  619.338.6500
7   Facsimile:   619.234.3815

8   Attorneys for Defendant GEICO
    Indemnity Company
9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

12

| | |
|---|---|
| 13  MICHAEL MCGRANAHAN, an individual,<br><br>14<br><br>15          Plaintiff,<br><br>16       v.<br><br>17  GEICO INDEMNITY COMPANY;<br>GEICO GENERAL INSURANCE<br>COMPANY; and DOES 1 through 100,<br>18  inclusive,<br><br>19          Defendants.<br><br>20<br><br>21 | Case No. 5:22-cv-00125-FLA-KKx<br><br>**DEFENDANT GEICO INDEMNITY COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing:**<br>**Date:      February 10, 2023**<br>**Time:       1:30 p.m.**<br>**Courtroom: 6B**<br><br>Hon. Fernando L. Aenlle-Rocha<br>Mag. Kenly Kiya Kato |

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ..................................................................................... 1

II.     THE MATERIAL FACTS ARE UNDISPUTED ................................... 1

III.    THE BAD FAITH CLAIM FAILS BECAUSE THE  UNCORROBORATED DEMAND WAS NOT REASONABLE.................................................... 2

   A.   The Information Available To GEICO Did Not Establish A  "Substantial Likelihood" Of An Excess Judgment ....................... 2

      1. Uncorroborated Claims Do Not Trigger A Duty To Settle  Under *Du*.... 2

      2. The Police Report Was Insufficient To Demonstrate A  Substantial ....... Likelihood Of An Excess Judgment ......................... 3

      3. GEICO Did Not "Know" The Claim Was Worth The Policy  Limits ...... Before The Demand Expired ...................................... 5

      4. Conclusions Regarding The "Reasonableness" of the  Demand ............ 7

IV.    THE BAD FAITH CLAIM FAILS FOR THE INDEPENDENT  REASON THAT GEICO'S RESPONSE TO THE DEMAND WAS  REASONABLE AS A MATTER OF LAW ................................................................... 7

   A.   McGranahan's Attempts to Distinguish *Capitol Specialty* and  *Spradlin* Fail ................................................................... 8

      1.  *Capitol Specialty* Is Directly On-Point .................................. 8

      2.  *Spradlin* Is Also On-Point ................................................ 9

   B.   McGranahan Fails to Create A Triable Issue Through His  "Inadequate Investigation" Argument ............................. 11

   C.   McGranahan Was "Prop 213".................................................. 13

   D.   Conclusions Regarding The "Reasonableness" Of GEICO's  Response to the Demand .................................................... 15

V.     PLAINTIFF CONCEDES HIS BREACH OF CONTRACT CLAIM  FAILS AS A MATTER OF LAW ................................................................. 15

VI.    CONCLUSION....................................................................................... 15

SMRH:4867-4489-4028.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*
 562 F. Supp. 3d 563 (C.D. Cal. 2021)...............................................4, 8, 9, 10, 11

*Du v. Allstate Insurance Company*
 697 F. 3d 753 (9th Cir. 2012) ..........................................................................2, 3

*Graciano v. Mercury Gen. Corp.*
 231 Cal. App. 4th 414 (2014) ...............................................................................7

*Integon Preferred Ins. Co. v. Saavedra*
 2019 WL 13075958 (C.D. Cal. 2019) ................................................................10

*Integon Preferred Insurance Company v. Saavedra*
 2020 WL 11627347 (C.D. 2020)........................................................................10

*Lee v. First Nat'l Ins. Co.*
 2010 WL 11549637 (C.D. Cal. Dec. 22, 2010) ...................................1, 2, 12, 14

*Maxwell v. Fire Ins. Exch.*
 60 Cal.App.4th 1446 (1998)...............................................................................15

*Pureco v. Allstate Indem. Co.*
 2018 WL 7143624 (C.D. Cal. 2018) ........................................................4, 5, 9, 10

*Quackenbush v. Superior Court*
 60 Cal.App.4th 454 (1997) .................................................................................14

*Spradlin v. GEICO Indem. Co.*
 2019 WL 6481304 (C.D. Cal. 2019) ................................8, 9, 10, 11, 12, 13, 15

*Thompson v. Cannon*
 224 Cal.App.3d 1413 (1990) ................................................................................3

*Wilson v. 21st Century Ins.*
 42 Cal. 4th 713 (2007) .......................................................................................12

SMRH:4867-4489-4028.1

1

<u>Statutes</u>

2

*California Code of Civil Procedure*

3

§ 999.1(f), (g)................................................................................3
§ 3333.4 .........................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:22-cv-00125-FLA-KKx

SMRH:4867-4489-4028.1    DEFENDANT GEICO INDEMNITY COMPANY'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

In its opening brief, GEICO established that it was entitled to summary judgment for three reasons, all based on undisputed facts:

First, McGranahan cannot prove that his policy limit demand was "reasonable" – i.e., one that demonstrated a substantial likelihood of an excess judgment – because it was not supported by a *single* record corroborating his recoverable damages;

Second, McGranahan cannot establish that GEICO was unreasonable when it neither accepted nor rejected his demand but instead sought the additional records that it was missing; and

Third, McGranahan has no breach of contract claim because GEICO defended and indemnified its insureds against the underlying lawsuit that McGranahan filed against them.

In opposing GEICO's motion, McGranahan does not and cannot dispute the essential facts. Instead, McGranahan employs the classic plaintiffs' tactic of throwing as much mud at the wall as possible in hopes that something will stick to create a triable issue. The Court should see through this tactic. The essential facts are undisputed, and so GEICO is entitled to summary judgment for the three reasons above.

## II.    THE MATERIAL FACTS ARE UNDISPUTED

For almost a year, McGranahan ignored GEICO's attempts to obtain records to corroborate his claim that he suffered serious injuries in the accident. (SUF Nos. 11-15, 29, 31-33.) Instead, McGranahan consulted with an attorney and made a policy limit demand that was not corroborated by a single record. (SUF Nos. 34, 36, 39, Ex. 23, Response to RFA No. 8.) After McGranahan ignored GEICO's outreach about the demand, GEICO responded by informing him that it could neither accept nor reject the demand without additional information. (SUF Nos. 43-45, 49, 51.) But McGranahan continued to ignore GEICO and instead filed suit against its

insureds.  (SUF Nos. 50, 52-53, 55-58.)  It was not until more than a year later, in

discovery, that McGranahan provided the *first* records corroborating his injury

claim.  (SUF No. 61; Ex. 23, Response to RFA Nos. 26, 27.)  GEICO responded by

tendering its policy limit but McGranahan rejected it.  (SUF No. 64-65.)

McGranahan has now sued GEICO, alleging breach of contract and bad faith refusal

to settle in an attempt to collect the full amount of the stipulated judgment in the

underlying action.  (SUF Nos. 69.)

III.    **THE BAD FAITH CLAIM FAILS BECAUSE THE
        UNCORROBORATED DEMAND WAS NOT REASONABLE**

GEICO's opening brief established that McGranahan cannot prove the first

and most essential element of his bad faith claim: that he made a "reasonable"

demand – i.e., one that established a substantial likelihood of an excess judgment.

In response, McGranahan offers a scattershot of arguments that all miss the mark.

A.    **The Information Available To GEICO Did Not Establish A
       "Substantial Likelihood" Of An Excess Judgment**

McGranahan first argues that the information that GEICO had at the time of

the demand was sufficient to establish a substantial likelihood of an excess

judgment, which included (1) the uncorroborated statements by McGranahan and

Porter; and (2) the police report.  McGranahan is wrong under well-established law

in the Ninth Circuit.

1.    **Uncorroborated Claims Do Not Trigger A Duty To Settle
       Under *Du***

At its heart, McGranahan's argument is that the uncorroborated claims that

Porter made (orally to GEICO and in the demand) were enough here.  The

implication is that if an uncorroborated claim is dramatic enough it should be

sufficient to trigger a duty to settle.  But this is not so under *Du v. Allstate Insurance

Company*, 697 F. 3d 753 (9th Cir. 2012).

In *Du*, the claimant and his representatives made *even more* dramatic claims

than those here.  They told Allstate that the claimant had been thrown from her

1   vehicle; had sustained a severe blow to the head; had been *airlifted* to a hospital; and

2   had remained unconscious *for days*. *Du v. Allstate Ins. Co.*, Appellant's Opening

3   Brief, 2011 WL 3288086 at *7. Nevertheless, the Ninth Circuit Court of Appeals

4   rejected the notion that such uncorroborated representations from the claimant and

5   her representatives (dramatic or not) were sufficient to trigger a duty to settle. *Du*,

6   *supra*, 697. F. 3d at 759.

7        The rationale behind *Du* is simple. If the law required an insurer to pay its

8   policy limits based on a claimant's uncorroborated version of events, the threat of

9   bad faith liability would impel insurers to pay claims without investigation. While

10  some claimants are honest, some are not. The dishonest claimants and attorneys

11  would take advantage of such a rule to secure payment of inflated or even outright

12  fraudulent claims. Such a result would be inconsistent with good policy, and also

13  inconsistent with the California authority recognizing an insurer's right to obtain

14  adequate proof before being required to settle a claim. *See also Thompson v.*

15  *Cannon*, 224 Cal.App.3d 1413, 1417 (1990) (recognizing that while insurance

16  companies owe a "duty to deal fairly with the insured," they also owe "competing

17  duties to other policyholders and to stockholders not to honor meritless claims").

18  This is one of the reasons why California recently codified that a policy limit

19  demand must have corroborating proof, such as medical records and bills, to be

20  "reasonable." *See Cal. Code. Civ. Proc.* § 999.1(f), (g).

21       Thus, under *Du*, it is black-letter law that the Porter's uncorroborated claims

22  did not trigger a duty to settle in this case.

23                   **2.    The Police Report Was Insufficient To Demonstrate A**
                            **Substantial Likelihood Of An Excess Judgment**
24

25       Because *Du* defeats McGranahan's lead argument, he is left arguing that the

26  information in the police report – alone – was sufficient to demonstrate a substantial

27  likelihood of an excess judgment. After scouring the police report, McGranahan

28  points to the face page of the report identifying a "major injury" traffic collision; a

1  note that he was found unresponsive at the scene before being transported to the

2  hospital; and the fact that a page of the report contains the word "exceptional."

3       But courts in the Ninth Circuit have repeatedly held that such information

4  does *not* demonstrate a substantial likelihood of an excess verdict in cases like this

5  one. *See Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*, 562 F. Supp. 3d 563

6  (C.D. Cal. 2021); *Pureco v. Allstate Indem. Co.* 2018 WL 7143624 *7 (C.D. Cal.

7  2018).

8       For example, in *Pureco*, Allstate insured a driver who caused an accident

9  under an auto policy with a $100,000 policy limit. *Id.* at *1. During the claim,

10  Allstate obtained a copy of the traffic collision report indicating that the claimant

11  had been transported by ambulance to the hospital with chest and leg trauma, and

12  that the claimant had been trapped inside his vehicle and had been unable to make

13  any statements due to his injuries. Further, a witness told Allstate that the claimant

14  was knocked unconscious, was lying across both the driver's seat and the passenger

15  seat, and was still unconscious when he was put into the ambulance. *Id.*

16       Thereafter, the claimant's attorney sent demand for the policy limits "in light

17  of the severe injuries sustained" by the claimant. *Id.* at *2. The demand was not

18  accompanied by any medical records or bills but it did include ambulance and fire

19  department reports, which stated that the claimant had been removed from his

20  vehicle using the "jaws of life"; had exhibited breathing difficulty; was

21  "unresponsive"; had a three-inch laceration to the back of his head; and had scored

22  only a 6 on the Glasgow Coma Scale (GCS). *Id.*

23       In response to the demand, Allstate (like GEICO here) explained that it

24  needed medical records to evaluate the loss and sought authorizations to obtain

25  those records. *Id.* at *3. The claimant's lawyer responded with more

26  uncorroborated assertions – namely, that the claimant had suffered "significant

27  injuries from which he would never fully recover" – but still provided no supporting

28  medical bills or records. *Id.* When the claimant's lawyer later provided

corroborating medical records, Allstate offered its policy limit.  The claimant rejected that offer, sued the insured, and won a $5 million judgment.  *Id.*

In the subsequent bad faith refusal to settle lawsuit, the claimant (like McGranahan here) argued that Allstate had been aware of the nature of the accident and the description of the claimant's injuries in the disclosed reports, including the claimant's low GCS score.

But *Pureco* held that even if it were assumed that Allstate had constructive notice of all those facts, the claimant did <u>not</u> raise a triable issue of fact as to the key legal question: whether there was a substantial likelihood of an excess judgment based on the information in Allstate's possession when the settlement demand expired.  *Id.* at *8.  *Pureco* held that the claimant had failed to do so – "indeed, plaintiffs do not <u>quantify</u> any of the damage caused by the accident…"  *Id.* (Emphasis added.)  In doing so, *Pureco* explained that "**a preliminary indication that an injury is serious is not at all the same as a substantial likelihood that damages will total at least [the policy limit].**"  *Id.*  (Emphasis added.)

Here, the information contained in the police report was *far* less substantive than the information held insufficient in *Pureco*.  Further, like in *Pureco*, the police report here did little more than provide a *preliminary* indication that McGranahan had suffered a serious injury.  It did not provide *any* information that would *quantify* the medical injuries suffered by McGranahan (or any of his other recoverable damages).  Thus, consistent with *Pureco*, McGranahan is wrong that the information in the police report was sufficient to demonstrate a substantial likelihood of an excess judgment.

### 3.    GEICO Did Not "Know" The Claim Was Worth The Policy Limits Before The Demand Expired

With the facts and law against him, McGranahan next turns to sleight of hand, attempting to take GEICO's claim notes out of context to argue that its claim

1   adjuster (Marcie Messmer) "knew" the claim was worth more than the policy limit

2   before receiving his demand.  But the undisputed evidence establishes the opposite.

3        With 23 years of experience in handling automobile liability claims, Messmer

4   does not make definitive statements about the sufficiency of policy limits where the

5   facts have not yet been corroborated.  (Messmer Decl., ¶ 1, 10.)  Rather, in

6   September 2014, Messmer told Porter that <u>if</u> her uncorroborated claims regarding

7   McGranahan's injuries and hospitalizations were accurate, the policy limits <u>might</u>

8   <u>not</u> be enough to cover McGranahan's medical bills.  (*Id.* at ¶ 10.)  Around the same

9   time, Messmer informed the insured that there was a <u>potential</u> for excess exposure

10  based on the information that GEICO had been told (but had not yet been able to

11  corroborate).  (*Id.* at ¶ 11.)

12       Further, after Messmer learned that McGranahan was likely "Prop 213,"

13  meaning his potential recovery would be limited to his economic damages, she

14  noted in the claim file that the amount of McGranahan's *bills* would likely to exceed

15  the policy limit.  (*Id.* at ¶ 13.)  But she did so knowing that she did not yet know the

16  amounts *paid* by McGranahan's health insurance – i.e., the actual amounts he might

17  be able to recover.  (*Id.*)  Based on Messmer's training, she knew that a personal

18  injury claimant's damages recovery in California was not based on the full value of

19  their bills, but on the (often much lower amount) accepted by the medical provider

20  as payment from the claimant's health insurer or Medi-Cal.  (*Id.*)

21       Finally, in December 2014, still needing to corroborate McGranahan's

22  recoverable damages, Messmer advised Porter that she was <u>unsure</u> if the policy

23  limits would be enough while reiterating her offer to obtain McGranahan's medical

24  records directly from the hospital if he would provide the necessary authorization.

25  (*Id.* at ¶ 15.)  And when questioned directly in her deposition whether she "knew"

26  the policy limits were going to be insufficient when talking with Porter, Messmer

27  responded unequivocally: "I did not know that."  (Ex. 26 (Messmer Depo. Tr.

28  157:17-24.)

In short, the undisputed evidence – straight from Messmer's mouth – is that she did not "know" that the claim was worth more than the policy limit before McGranahan's demand expired.  Rather, the undisputed facts show that Messmer was seeking the corroborating records needed to evaluate that very issue.  It is undisputed that McGranahan ignored GEICO's attempts to obtain this corroboration both before and after he sent his demand.  (SUF Nos. 11-15, 29, 31-33, 45, 47, 49-50, 52-53, 55-57.)  As a result, GEICO did not "know" that McGranahan's claim was worth more than the policy limit until more than a year after his demand expired.  (SUF No. 61-62.)  It then promptly tendered its policy limit.  (SUF No 64.)

### 4.    Conclusions Regarding The "Reasonableness" of the Demand

In sum, McGranahan's demand was not "reasonable" because it was not supported by a single corroborating record.  Rather, because it was based on nothing more than uncorroborated statements and a police report that had no information quantifying McGranahan's recoverable damages, it was unreasonable under well-established Ninth Circuit law.

## IV.    THE BAD FAITH CLAIM FAILS FOR THE INDEPENDENT REASON THAT GEICO'S RESPONSE TO THE DEMAND WAS REASONABLE AS A MATTER OF LAW

GEICO's opening brief also established that McGranahan's claim fails for the independent reason that he cannot establish the second element of a bad faith refusal to settle claim: that GEICO acted *unreasonably* in response to his demand.

Where, as here, an insurer did not receive enough information to accept a demand, California law is clear that an insurer can reasonably respond by neither accepting nor rejecting the demand and instead seeking additional information. *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014).

As detailed in GEICO's opening brief, multiple courts in the Ninth Circuit have applied this rule to nearly identical facts to this one – finding that the insurer was reasonable as a matter of law when it responded to an uncorroborated demand

-7-

by requesting the records needed to evaluate the claim.  *See Capitol Specialty Ins.
Corp.*, *supra*, 562 F. Supp. 3d 563; *Spradlin v. GEICO Indem. Co.*, 2019 WL
6481304 at *21 (C.D. Cal. 2019).  McGranahan's half-hearted attempt to distinguish
these cases and his attempt to manufacture a new set of facts through a so-called
"claims handling expert" both fail.

### A.    McGranahan's Attempts to Distinguish *Capitol Specialty* and *Spradlin* Fail

#### 1.    *Capitol Specialty* Is Directly On-Point

In *Capitol Specialty*, the claimant motorcyclist sent a demand that included a
police report and eight pages of medical records that showed the accident had left
him *paralyzed*.  *Capitol Specialty Ins. Corp.*, 562 F.Supp.3d at 567.  The paralyzed
claimant later sent a demand that did not include bills showing the cost of his
paralysis treatment.  *Id.*  GEICO responded by requesting medical bills.  *Id.*  When
GEICO did not receive the requested documents, it responded that it was unable to
meet the demand.  *Id.*  *Capitol Specialty* held that GEICO did not act in bad faith by
not accepting the demand – as a matter of law.  *Id.* at 572.

The parallels between this case and *Capitol Specialty* are too numerous to list.
Knowing this, McGranahan tries to distinguish the case by defaulting back to his
argument that GEICO "knew" his case was worth more than the policy limit.  But
the undisputed evidence establishes this was not the case, as discussed in Section
III(A)(3) above.

McGranahan next argues that this case is different than *Capitol Specialty*
because that case did not have a claimant who had difficulty communicating with
the carrier because he was cognitively impaired.  But those aren't the facts here
either.  Indeed, while Porter made an uncorroborated assertion of impairment,
McGranahan offers no evidence that he was in fact cognitively impaired at any
relevant time.  And in any event, the alleged impairment did not prevent
McGranahan from providing the medical bills GEICO requested because Porter

1  communicated on his behalf.  (SUF No. 11; Ex. 23, Response to RFA No. 14.)  With

2  Porter's assistance, McGranahan was able to communicate with GEICO, consult an

3  attorney, and send a policy limit demand (that he signed).  (SUF Nos. 16, 17, 27, 34,

4  36, 40.)  The fact that Porter ignored GEICO's outreach had nothing to do with

5  cognitive impairment.  Porter claims she just wasn't checking her mail or voicemail

6  (even after submitting the demand).  (SUF No. 51.)

7       Put simply: McGranahan cannot escape *Capitol Specialty*, which compels

8  summary judgment in favor of GEICO.

9            **2.    *Spradlin* Is Also On-Point**

10      In *Spradlin*, the claimant motorcyclist told GEICO that he had suffered

11  multiple broken bones; had been hospitalized for five days; had undergone surgery;

12  would be out of work for at least two months; and would have to undergo a second

13  surgery.  *Spradlin*, *supra*, 2019 WL 6481304 at *1.  Yet, *Spradlin* held that GEICO

14  acted reasonably as a matter of law when it responded to the motorcyclist's policy

15  limit demand by stating it could neither accept nor reject it without first obtaining

16  corroborating medical records.  *Id.* at *5.

17      McGranahan seeks to avoid *Spradlin* by citing its dicta that there might be

18  "other factual contexts" where a reasonable likelihood of an excess judgment could

19  exist based solely on circumstantial evidence surrounding the incident.  *Id.* at *21.

20  McGranahan argues that this is such a case because GEICO also had the police

21  report.  However, as discussed above in Section III(A)(2), the police report here did

22  *not* provide sufficient circumstantial evidence to allow GEICO to evaluate whether

23  McGranahan's claim had a substantial likelihood of an excess judgment.  That is

24  because the police report did not provide any information *quantifying*

25  McGranahan's claimed injuries.  *See Pureco*, *supra*, 2018 WL 7143624 at *8.

26      Moreover, *Spradlin* itself confirmed that just having the police report would

27  *not* have changed the outcome in that case.  *Spradlin* held this additional

28  information would still not have cured the "dispositive" defect in the information

1  available to GEICO at the time of the demand: the lack of medical records or billing

2  records confirming the full extent of his injuries, including the costs of his past and

3  future medical treatment.  *Id.*

4       Finding no refuge in *Spradlin*, McGranahan cites another case that briefly

5  discussed its dicta: *Integon Preferred Insurance Company v. Saavedra*, 2020 WL

6  11627347 (C.D. 2020), a case involving denial of a new trial motion following a

7  jury verdict.  But *Integon* is distinguishable for two reasons.  First, the insurer there

8  *agreed* that it had enough information to accept the claimants' settlement demand,

9  but the insurer nevertheless failed to accept by the insured's reasonable deadline.

10 *Id.* at *4.  There is no such issue here.

11      Second, in *Integon,* there were two seriously injured claimants (husband and

12 wife) and the intoxicated insured carried only the California statutory minimum

13 liability limits of just $15,000 per claimant and $30,000 in total.  *Id*. at *2; see also

14 *Integon Preferred Ins. Co. v. Saavedra*, 2019 WL 13075958 at *4 (C.D. Cal. 2019)

15 (specifically identifying the policy limits as such).  Further, *Integon* provides no

16 indication that either of the husband and wife claimants was "Prop 213," meaning

17 that both claimants were entitled to recover not just medical special damages but

18 pain and suffering damages as well.  As a result, the claimants' entitlement to at

19 least $15,000 each was so obvious that the insurer admitted that medical bills were

20 "not necessary" to evaluate the claim.  *Id.* at *5.

21      *Spradlin's* dicta has its place – for example, where a drunk driver with a

22 minimum limits policy injures multiple claimants who are entitled to both general

23 and special damages, as in *Integon*.  But it does not have a place here.  Rather, just

24 like in *Capitol Specialty* and *Spradlin* (and *Pureco*) GEICO reasonably needed

25 corroborating medical records and bills to quantify McGranahan's injury claims

26 because (i) the policy limits were $100,000, not just the minimum limits, (ii)

27 McGranahan was not entitled to general damages, and (iii) McGranahan's

28

1 | *recoverable* medical expenses would be only a tiny fraction of the total bills because

2 | he was covered by Medi-Cal.

3 |        Consequently, McGranahan's attempt to escape *Capitol Specialty* and

4 | *Spradlin* fail.  Rather, as in both of those cases, GEICO is entitled to summary

5 | judgment because it reasonably responded to McGranahan's demand by neither

6 | accepting nor rejecting it and instead requested the additional information it was

7 | missing.

8 | **B.    McGranahan Fails to Create A Triable Issue Through His "Inadequate Investigation" Argument**

9 |

10 |        Given the undisputed facts that McGranahan sent a demand that was not

11 | corroborated by a single record, and that McGranahan ignored GEICO's outreach

12 | both before and after the demand, it is not surprising that he next seeks a way to

13 | shift blame to GEICO by arguing that its investigation was "inadequate."

14 |      McGranahan does so by offering a declaration from his hired "claims

15 | expert," Sandra Moriarty, who speculates about additional avenues of investigation

16 | that might have revealed the damages information that McGranahan failed or

17 | refused to provide.  As detailed in GEICO's Objections to Evidence, Moriarty's

18 | declaration is improper and inadmissible for many reasons.  However, even if the

19 | Court were to entertain this "inadequate investigation" argument, it is meritless for

20 | the reasons discussed below.

21 |        The implied covenant of good faith and fair dealing requires a <u>reasonable</u>

22 | investigation, not a <u>perfect</u> one.  Consequently, even if McGranahan could show

23 | some fact that GEICO might have discovered sooner (if it had found a way to get

24 | around McGranahan and Porter's failure to cooperate), that still wouldn't be enough

25 | to create a triable issue.  He would also have to offer evidence that the investigatory

26 | shortcoming was the result of bad faith rather than simply a less-than-perfect

27 | investigation.  *Shade Foods, Inc., supra,* 78 Cal. App. 4th at 880 (plaintiff has

28 | burden to offer evidence of some deficiency in investigation that "rise[s] to the level

1  of unfair dealing."); *Wilson v. 21st Century Ins.*, 42 Cal. 4th 713, 726 (2007)

2  (evidence amounting only to "honest mistake, bad judgment or negligence" is not

3  enough; plaintiff must show "a conscious and deliberate act, which unfairly

4  frustrates the agreed common purposes and disappoints the reasonable expectations

5  of" the insured).  There is no such evidence here.

6       Further, where a bad faith claim is premised on inadequate investigation, the

7  plaintiff must not only identify what additional investigative steps the insurer should

8  have taken, but also must offer evidence that those additional steps would in fact

9  have uncovered the missing information.  Absent such evidence, any criticisms

10 about omitted avenues of investigation are mere speculation. In *Lee v. First Nat'l*

11 *Ins. Co.,* 2010 WL 11549637, at *18–19 (C.D. Cal. Dec. 22, 2010), for example, the

12 court granted summary judgment -- despite fact that insurer did not interview all

13 witnesses -- because the insureds "merely speculate[d]" that the additional

14 interviews would have proved useful without offering actual evidence.

15      Here, McGranahan (through Moriarty) argues that GEICO was unreasonable

16 based on speculation that there were additional investigative steps that "would most

17 likely have significantly assisted" the evaluation of his claim, including: (1)

18 obtaining witness statements from the insured's son and the investigating officers;

19 (2) obtaining the unredacted police report; and (3) trying to conduct an in-person

20 meeting with himself and Porter.  As in *Lee*, McGranahan offers no evidence that

21 these additional investigative steps would have yielded the information GEICO

22 needed to evaluate the claim, and so the argument should be likewise be rejected

23 here.

24      Further, these same assertions were rejected in *Spradlin*.  There, the plaintiff

25 argued that GEICO acted unreasonably because it failed to take additional

26 investigative steps, such as (1) obtaining the police report sooner, (2) interviewing

27 witnesses like the investigating officer; and (3) conducting an in-person meeting

28 with the claimant to verify his injuries.  *Spradlin*, *supra*, 2019 WL 6481304 at *23.

-12-

*Spradlin* explained that, while this information would have added additional context as to whether the insured was at fault, and whether the claimant actually suffered an injury as a result of the accident, "it would not have cured the **dispositive** defect" in the information available to GEICO, which was "the lack of medical records or billing confirming the full extent of [the claimant's] injuries, the cost of the [claimant's] past medical treatment, and the likelihood of future care." *Id.* *Spradlin* further explained that the act of sending an adjuster to personally observe the [claimant's injures] would only confirm that his injury was legitimate but would not provide [GEICO] with the information it required about the cost for that injury." *Id.*

Here, just as in *Spradlin*, GEICO did not need further information regarding liability. And it did not need further indications that McGranahan had suffered serious injuries. It needed records corroborating his recoverable damages, including medical records and bills that showed the amount of his *paid* medical expenses. Thus, like in *Spradlin*, the additional investigative steps identified by McGranahan would not have cured the dispositive defect in the information available to GEICO at the time McGranahan's demand was pending.

In sum, McGranahan's "inadequate investigation" argument fails legally because he has not offered evidence that any investigatory shortcomings were the result of bad faith rather than simply less-than-perfect investigation. And his argument fails factually because the additional investigative steps that he speculates about would not have provided the corroborating records that GEICO needed to evaluate the claim.

## C.    McGranahan Was "Prop 213"

McGranahan's last argument seeks to cast doubt on the fact that he was "Prop 213" with respect to the accident. McGranahan argues that "no judgment or ruling" has been entered on this issue. He then implies that there might be some "knowledge" or "good faith" exception that would have given him a pass from his

-13-

1   obligation to be adequately insured for any vehicle he operates.  But McGranahan is
2   wrong on the law and the facts yet again.

3       First, California law is clear that no hearing (let alone a judgment) is required
4   to determine the applicability of "Prop 213" – you're either insured or you're not.
5   *See Quackenbush v. Superior Court*, 60 Cal.App.4th 454, 464 (1997).

6       Second, the burden was on McGranahan to establish he complied with
7   California's financial responsibility laws.  It's in the statue itself: a person injured in
8   an auto accident is prohibited from recovering non-economic losses unless **they can**
9   **establish their "financial responsibility"** as required by California's financial
10  responsibility laws.  *Cal. Code Civ. Proc.* § 3333.4.  (Emphasis added.)

11      Third, there is no "good faith" exception to "Prop 213," as McGranahan
12  implies.  *Quackenbush*, *supra*, 60 Cal.App.4th at 468, n. 8 ("The statute mentions no
13  potential excuses for driving without insurance.")

14      Here, the information available to GEICO at the time the demand was
15  pending indicated that McGranahan was "Prop 213."  His auto insurer had
16  confirmed that his liability policy did not provide coverage for the accident and the
17  owner of the motorcycle told GEICO that he did not maintain liability coverage on
18  the motorcycle.  (SUF Nos. 6, 24, 48.)  More than eight years and two lawsuits later,
19  the facts haven't changed.

20      McGranahan admits that his liability policy did not provide coverage.  (Ex.
21  23, Response to RFA No. 4.)  And McGranahan still cannot meet his burden of
22  proof to show the owner of the motorcycle had liability coverage for the motorcycle.
23  (*Id.* at Response to RFA No. 3.)[1]

24      Thus, in sum, GEICO was not unreasonable for evaluating McGranahan's
25  claim as if he was "Prop 213."  He was "Prop 213."  This fact had a significant

---

[1] McGranahan's aside that recoverable damages under Prop 213 can include loss of earnings changes nothing.  GEICO asked McGranahan to quantify his potential loss of earnings claim for almost a year.  (SUF Nos. 14, 32; Ex. 6, 8.)  He never did. (SUF Nos. 15, 33.)

-14-

impact on his recoverable damages – and a significant impact on the information necessary to evaluate whether this claim had a substantial likelihood of an excess judgment.

### D.   Conclusions Regarding The "Reasonableness" Of GEICO's Response to the Demand

In sum, in responding to McGranahan's uncorroborated demand by neither accepting nor rejecting it, and instead seeking additional information, GEICO acted reasonably as a matter of law under well-established case law in the Ninth Circuit.

## V.   PLAINTIFF CONCEDES HIS BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

A claim for breach of contract fails as a matter of law when a liability insurer has defended its insureds and indemnified them up to the policy limit for a covered lawsuit. *See Maxwell v. Fire Ins. Exch.*, 60 Cal.App.4th 1446, 1449 (1998) (holding that there could be no breach of contract on a third-party liability claim where the insured had provided a defense and paid its full policy limit in partial satisfaction of the judgment); *Spradlin*, *supra*, 2019 WL 6481304, at *15 (same).  There is no dispute that GEICO did so here.  (SUF Nos. 59, 68.)

Thus, as Plaintiff concedes by not even arguing this issue in his Opposition, GEICO is entitled to summary judgment on the breach of contract cause of action.

## VI.   CONCLUSION

For the reasons above, and those in GEICO's moving papers, the Court should grant GEICO summary judgment.

Dated:  January 27, 2023       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   _____
                      /s/ Michael Bean
                   MICHAEL BEAN

              Attorneys for Defendants
           GEICO INDEMNITY COMPANY