JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MCGRANAHAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GEICO INDEMNITY COMPANY, et al.,<br><br>　　　　　　Defendants. | Case No. 5:22-cv-00125-FLA (KKx)<br><br>**ORDER GRANTING DEFENDANT GEICO INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT [DKT. 26]** |

## **RULING**

Before the court is Defendant GEICO Indemnity Company's ("Defendant") Motion for Summary Judgment (the "Motion"). Dkts. 26 ("Mot."), 26-1 ("Mot. Br."). Plaintiff Michael McGranahan ("Plaintiff") opposes the Motion. Dkts. 29 ("Opp'n"), 29-1 ("Opp'n Br."). On January 31, 2023, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for February 10, 2023. Dkt. 31; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion.

## **Evidentiary Objections**

On a motion for summary judgment, the parties may only object to evidence if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The parties advance several objections to the evidence submitted by their counterparts. *See* Dkts. 29-2, 30-2.

While the parties' objections may be cognizable at trial, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant facts at trial, and not the form of these facts as presented in the motions. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting."); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

Thus, to the extent the court relies upon evidence to which the parties object, the objections are OVERRULED. To the extent the court does not, the objections are

DENIED as moot.

## BACKGROUND[1]

On June 30, 2014, Defendant's insured, Maria Zabala ("Zabala"), was involved in an automobile versus motorcycle accident with Plaintiff. Dkt. 30-1 ("DMF") ¶¶ 1, 2. Zabala reported the accident to Defendant on July 1, 2014. *Id.* ¶ 3. Defendant took Zabala's recorded statement on that date. *Id.* ¶ 4.

On August 26, 2014, Defendant obtained a copy of the police report of the accident, which identified Plaintiff as the operator of the motorcycle. *Id.* ¶ 5. The police report identified Plaintiff's insurance carrier as "unknown," but noted he was found incapacitated and unresponsive on the scene. *Id.* ¶¶ 6–7. The "Described Injuries" section of the police report was redacted. *Id.* ¶ 8.[2]

On August 29, 2014, Defendant called the telephone number on the police report. *Id.* ¶ 9. Defendant received the voicemail for Cindy Porter ("Porter"), Plaintiff's long-time girlfriend. *Id.* ¶¶ 9–10.

On September 1, 2014, Defendant sent Plaintiff a letter requesting his recorded statement and asking for the best telephone number to reach him. *Id.* ¶ 12. That same day, Defendant sent Plaintiff a second letter informing him that "if you intend to pursue a claim we will need to obtain supporting documentation regarding your injuries, treatment and incurred & paid expenses[.]" *Id.* ¶ 13. The letter also enclosed medical and wage authorization forms, which Defendant explained would "assist us in acquiring the necessary documents for us to fairly evaluate your claim in a timely manner." *Id.* ¶ 14. Defendant never received a response. *Id.* ¶ 15.

---

[1] The court cites to Defendant's responses to Plaintiff's statement of genuine disputes of material fact. Dkt. 30-1 ("DMF"). The court deems a fact uncontroverted even where a party purports to "dispute" a fact if that party has presented no evidence creating a genuine dispute of material fact or if that party's evidence does not create a genuine dispute of material fact.

[2] Plaintiff argues an unredacted version of the report "was always available to the defendant had it made the effort to get it." DMF ¶ 8.

On September 16, 2014, Defendant called and spoke with Porter, who said Plaintiff was in a rehabilitation facility and had suffered serious injuries. *Id.* ¶ 16.[3] Defendant called and spoke to Porter again on September 22, 2014. *Id.* ¶ 17. During that call, Porter said Plaintiff had suffered serious injuries and had been hospitalized for several weeks. *Id.* ¶ 18.[4] Porter also stated Plaintiff had obtained "emergency" health insurance. *Id.* ¶ 19. Plaintiff's emergency health insurance was Medi-Cal, which paid for all of Plaintiff's accident-related medical expenses. *Id.* ¶ 22. Defendant explained the claim process to Porter and advised that, if her claims regarding Plaintiff's injuries and hospitalization were accurate, Defendant's policy might not be enough to cover Plaintiff's medical bills. *Id.* ¶ 20. Defendant claims it also asked Porter to provide any medical bills that she received. *Id.* ¶ 21.[5]

On September 25, 2014, Defendant received a call from Porfirio Bivian ("Bivian"), who identified himself as the owner of the motorcycle that Plaintiff was riding at the time of the accident. *Id.* ¶ 23. Bivian told Defendant he did not have liability insurance for the motorcycle. *Id.* ¶ 24. Defendant noted that, because there was no liability insurance for the motorcycle, Plaintiff might be "Prop 213." *Id.* ¶ 25.[6]

On December 4, 2014, Defendant called Porter and asked to speak with Plaintiff. *Id.* ¶ 27. Porter claimed Plaintiff "just wasn't there mentally." *Id.* Defendant claims it again asked Porter to provide medical bills and Porter stated she

---

[3] Plaintiff claims Porter told Defendant Plaintiff had suffered "head trauma, broken arms, plates, etc." DMF ¶ 16.

[4] Plaintiff states Porter told Defendant that Plaintiff "was in the hospital for 7 weeks and then transferred to a rehab facility and is still there he was in ICU for 2 of the 7 weeks. He was on a ventilator then had a tracheostomy. [H]e then got MRSA infection. he had severe head trauma, broken jaw, broken arms that required plates and screws." DMF ¶ 18.

[5] Porter stated she cannot recall Defendant asking her to send Plaintiff's medical bills during a call. DMF ¶ 21.

[6] Proposition 213 precludes a person who was injured while operating an uninsured vehicle from recovery for any non-economic losses. Cal. Civ. Code § 3333.4.

4

would mail copies of all bills received thus far. *Id.* ¶¶ 28, 30. Defendant also offered to obtain the medical records directly, if Plaintiff would provide the necessary authorization. *Id.* ¶ 29.

From December 2014 to July 2015, Defendant left voicemails for Porter reiterating its requests for Plaintiff's medical bills or authorizations to obtain them on four occasions (December 24, 2014, January 27, 2015, April 4, 2015, and July 8, 2015). *Id.* ¶ 31. On June 1, 2015, Defendant sent Plaintiff a letter requesting that he complete and return a form providing information about his claim. *Id.* ¶ 32. Neither Porter nor Plaintiff responded to Defendant's attempts to reach them. *Id.* ¶ 33.

On July 20, 2015, Defendant received a demand letter from Plaintiff (the "Demand Letter"). *Id.* ¶ 36. The Demand Letter claimed that Plaintiff had suffered "significant" injuries and asserted that his medical bills were "over a million dollars." *Id.* ¶ 37. Specifically, the Demand Letter stated Plaintiff "lost a majority of the use of [his] left arm and hand as well as having suffered significant injuries to [his] left leg that makes it difficult to walk," that he must use a leg brace to walk, and that his doctors informed him he suffered a "significant traumatic brain injury," affecting his processing and memory. *Id.* The Demand Letter requested Defendant pay "whatever insurance monies are available for Mrs. Zabala for the accident" by August 17, 2015. *Id.* ¶ 38. The Demand Letter did not include documentation substantiating Plaintiff's claimed injuries or medical bills. *Id.* ¶ 39. Prior to sending the Demand Letter, Porter had received documentation from the hospital treating Plaintiff indicating that Plaintiff's medical bills were over $1,000,000. *Id.* ¶ 41. Porter never provided such documentation to Defendant. *Id.* ¶ 42.

On July 31, 2015, Defendant sent a letter to Plaintiff acknowledging his demand. *Id.* ¶ 43. On August 6, 2015, Defendant sent a letter to Plaintiff stating that "in order to process your claim," Plaintiff needed to complete and return several enclosed forms, including a medical authorization that was "essential" to reviewing his claim. *Id.* ¶ 44. The letter also stated that "[i]f you prefer, you may gather your

1  medical bills and doctor's notes from your medical providers and forward them to us
2  for evaluation." *Id*. Defendant received no response to its letter. *Id*. ¶ 45.
3        Defendant claims it called Porter's telephone number on August 13, 2015, and
4  left a voicemail for Plaintiff requesting: (1) an extension of the demand deadline to
5  provide time for Defendant to obtain medical records and/or an authorization form;
6  and (2) Plaintiff's statement about the accident. *Id*. ¶ 46. Porter claims she has no
7  recollection of such a voicemail. *Id*.
8        On August 13, 2015, Defendant spoke with Plaintiff's automobile insurer, who
9  stated Plaintiff's automobile insurance policy did not apply if he was operating a
10 motorcycle. *Id*. ¶ 48. On August 17, 2015, Defendant sent a letter to Plaintiff
11 responding to his demand. *Id*. ¶ 49. The letter stated, "[w]e neither accept nor reject
12 such demand as we have inadequate information." *Id*. The letter further stated that
13 "to properly evaluate your claim, we are requesting additional documentation limited
14 to ... [c]ompleted medical authorization forms ... [and a c]opy of the police report with
15 no redaction." *Id*. Neither Plaintiff nor Porter ever responded to this letter. *Id*. ¶ 50.
16 Porter testified she was not actively checking the mail or her voicemails during this
17 time. *Id*. ¶ 51. On September 10, 2015, Defendant sent a letter reiterating its request
18 for medical authorization forms and a copy of the unredacted police report. *Id*. ¶ 52.
19 Defendant never received a response to this letter. *Id*. ¶ 53.
20       On September 15, 2015, Defendant received a letter of representation for
21 Plaintiff from Gregory Rizio, Esq. of Rizio & Nelson ("Rizio"). *Id*. ¶ 55. From
22 October 2015 to February 2016, Defendant contacted Rizio's office on six occasions
23 to reiterate its requests for Plaintiff's medical records or bills. *Id*. ¶ 56. Rizio did not
24 provide Plaintiff's medical records, bills, or authorizations that would allow
25 Defendant to obtain them independently. *Id*. ¶ 57.
26       On February 16, 2016, Plaintiff filed a lawsuit against Zabala, Carlos Zabala,
27 and Eliza Gomez seeking recovery for his bodily injury damages arising from the
28 accident (the "Underlying Action"). *Id*. ¶ 58. Defendant provided defense to its

insureds in the Underlying Action. *Id.* ¶ 59. The Underlying Action was delayed by Zabala's death, but resumed after Plaintiff was named administrator of Zabala's estate in December 2016. *Id.* ¶ 60.

Plaintiff did not provide Defendant with any of his medical bills or records until discovery in the Underlying Action. *Id.* ¶ 61. On May 15, 2017, Defendant received Plaintiff's bill from Riverside Community Hospital, which showed a billed amount of $1,148,985.26 and an insurance adjustment from Medi-Cal of $1,018,086.96, leaving a balance of $130,098.30. *Id.* ¶ 62. On May 17, 2017, Defendant instructed its insureds' defense counsel to offer the $100,000 policy limit to Plaintiff. *Id.* ¶ 64. Plaintiff rejected Defendant's policy limit tender. *Id.* ¶ 65.

On February 12, 2020, the parties reached a settlement agreement in the Underlying Action, under which: (i) Zabala's estate consented to a $1.5 million stipulated judgment to be entered against it, subject to Plaintiff's covenant not to enforce the judgment against the estate; (ii) the estate assigned to Plaintiff the right to sue Defendant for alleged bad faith failure to settle; and (iii) Plaintiff dismissed all other insureds. *Id.* ¶ 66. Defendant also paid the $100,000 policy limit in partial satisfaction of the stipulated judgment resolving the Underlying Action. *Id.* ¶ 68.

Plaintiff filed the instant lawsuit on October 20, 2021, asserting causes of action for breach of the implied covenant of good faith and fair dealing and breach of contract. Dkt. 1, Ex. A. ("Compl."). Plaintiff alleges Defendant unreasonably refused to accept the offer in his July 2015 Demand Letter. *Id.* ¶ 16.

Defendant filed the instant Motion on January 6, 2023. Mot. Plaintiff timely filed an Opposition. Opp'n. Defendant filed a Reply in support of its Motion. Dkt. 30 ("Reply").

/ / /

/ / /

/ / /

7

# DISCUSSION

## I. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id.* The court must view all

8

evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id.* at 630–31.  However, a party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

## II.     Analysis

### A.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails for two reasons: (i) Plaintiff's demand was not reasonable; and (ii) Defendant's response was not unreasonable.  Mot. Br. at 14–21.[7]  The implied covenant of good faith and fair dealing "obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured.  If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach."  *Pinto v. Farmers Ins. Exch.*, 61 Cal. App. 5th 676, 687 (2021) (citation and internal quotation marks omitted).  "In evaluating whether an insurer acted in bad faith, the critical issue is the reasonableness of the insurer's conduct under the facts of the particular case."  *Id.* (cleaned up).

A claim for breach of this implied duty has two elements.  *McDaniel v. Gov't Emps. Ins. Co.*, 681 Fed. App'x 614, 615 (9th Cir. 2017) (citing *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425–26 (2014)).  "First, the third party must have made a reasonable offer to settle the claims against the insured within the policy limits."  *Id.* (internal quotation marks omitted).  "Second, the insurer must have

---

[7] The court cites documents by the page numbers added by the CM/ECF system rather than any page numbers listed on the documents natively.

unreasonably failed to accept an otherwise reasonable offer within the time specified by the third party for acceptance." *Id.* (internal quotation marks omitted).

### 1.     Reasonableness of Plaintiff's Demand

An offer to settle the claims of an insured is reasonable if "(1) its terms are clear enough to have created an enforceable contract resolving all claims had it been accepted by the insurer, (2) all of the third party claimants have joined in the demand, (3) it provides for a complete release of all insureds, and (4) the time provided for acceptance did not deprive the insurer of an adequate opportunity to investigate and evaluate its insured's exposure." *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014) (cleaned up).  Generally, reasonableness is a question for the trier of fact. *See West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989). "Reasonableness in the bad faith insurance context is a question best left for the trier of fact unless the evidence is so clear as to produce only one possible result." *Medina v. Harco Nat'l Ins. Co.*, Case No. 2:15-cv-05595-BRO (MRWx), 2016 WL 7647680, at *12 (C.D. Cal. July 29, 2016) (citation omitted).

Defendant does not contend that Plaintiff's demand, if accepted, would not have met one of the required elements to make the offer reasonable under *Graciano*. Instead, Defendant argues Plaintiff's settlement offer in the Demand Letter was unreasonable because Plaintiff failed to provide corroborating records and failed to establish his financial responsibility under Proposition 213.  Mot. Br. at 15–18.

Defendant cites *Du v. Allstate Insurance Company*, 697 F.3d 753 (9th Cir. 2012), for the proposition that an insurer has "no duty to settle before receiving corroborating proof of the extent of the claimant's injuries and medical expenses." Mot. Br. at 15.  The court does not read *Du* so broadly.  In *Du*, the Ninth Circuit rejected the plaintiff's argument that the district court erred by not providing a jury instruction on an insurer's duty to settle.  697 F.3d at 757.  There, the plaintiff advanced a bad faith claim premised on the theory that the case would have settled within policy limits if the insurer had initiated earlier settlement negotiations. *Id.* at

10

758. The Ninth Circuit rejected this argument, finding that the insurer was unable to make an earlier settlement offer because "the only information [the insurer] had regarding [plaintiff's] injuries and medical bills were the uncorroborated and conflicting assertions" by plaintiff. In making this determination, the Ninth Circuit noted that plaintiff's expert conceded: (i) "that [the insurer] could not base a settlement offer solely on the representations of" plaintiff and (ii) "that it was reasonable for [the insurer] to rely" on a promise of forthcoming medical information. *Id.*

*Du*'s holding was highly dependent on the facts of that case and not decided in the summary judgment context, where the court determines the presence of disputed material facts. Defendant cites no authority to support the broad proposition that a settlement demand offer is rendered unreasonable as a matter of law simply because the offeror has not provided corroborating documentation.

Defendant's argument that Plaintiff's offer was unreasonable because Plaintiff failed to establish his financial responsibility under Proposition 213 fails for similar reasons. Specifically, Defendant argues "based on the information known to [it] at the time the demand was pending, [Plaintiff's] recovery against [Defendant's] insureds was limited to his economic losses." Mot. Br. at 17. Plaintiff counters that, even if Plaintiff were able to recover only economic losses, "there are a host of other economic losses that even a 'Proposition 213' claimant can recover, including future medical expenses, past lost income and future lost income[.]" Opp'n Br. at 20.

Even assuming arguendo that an insurer acts reasonably when it denies a settlement demand from a Proposition 213 claimant who has not provided corroborating documentation, Defendant does not explain how such circumstances would render the settlement *offer* unreasonable. Said differently, Defendant has not shown how Plaintiff's potential Proposition 213 status, for example, would prevent the contract from being enforceable or deprive it of adequate time or opportunity to investigate its potential liability. *See Graciano*, 231 Cal. App. 4th at 425.

    For the reasons set forth above, the court finds that Defendant has not proven the absence of disputed issues of material fact showing the unreasonableness of Plaintiff's demand.

### 2. Reasonableness of Defendant's Response

Defendant next argues that Plaintiff's claim for breach of the implied warranty of good faith and fair dealing fails because Defendant's response to the Demand Letter was reasonable. Mot. Br. at 18. Specifically, Defendant argues that courts in this circuit "have universally held that the insurer was reasonable as a matter of law when it responded to an uncorroborated demand by requesting the records needed to evaluate the claim." *Id.* Plaintiff counters that Defendant's response to the Demand Letter was unreasonable given the information available to it at the time, even without the provision of medical records. Opp'n Br. at 12. Plaintiff further argues that Defendant's efforts to investigate the claim were inadequate. *See id.* at 17.

    Whether an insurer unreasonably failed to accept a settlement offer turns on whether the insurer acted in bad faith. "While an insurer's conduct need not rise to the level of actual dishonesty, fraud, or concealment to constitute bad faith, an insurer's conduct must nevertheless be prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act." *McDaniel*, 681 Fed. App'x at 615–16 (internal quotation marks and citation omitted). Typically, whether an insurer acted "in bad faith in rejecting a settlement offer is a question of fact to be determined by the jury," but "the reasonableness of an insurer's conduct becomes a question of law only when, because there are no conflicting inferences, reasonable minds could not differ." *Id.* at 616 (internal quotation marks and citation omitted).

    The undisputed facts show that, after receiving Plaintiff's Demand Letter on July 20, 2015, Defendant requested corroborating medical records or medical authorization forms on at least nine separate occasions: three letters requesting medical records or medical authorization forms on August 6, August 17, and

September 10, 2015 (DMF ¶¶ 44, 49, 52), and six telephone calls to Plaintiff's counsel, Rizio, between October 2015 and February 2016 (*id.* ¶ 56).[8] Neither Plaintiff nor Rizio responded to these requests.

"While the implied duty to [make reasonable efforts to] settle is intended to protect the insured from excess exposure, 'the doctrine conversely does not exist to require insurers to denigrate their own interests by settling for the policy limits in the absence of sufficient evidence supporting the conclusion that the claim against the insured would exceed policy limits.'" *Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*, 562 F. Supp. 3d 563, 571–72 (C.D. Cal. 2021) (quoting *Spradlin v. GEICO Indem. Co.*, Case No. 2:18-cv-10299-SVW (KESx), 2019 WL 6481304, at *20 (C.D. Cal. Aug. 1, 2019)). The record supports a finding that, at the time Plaintiff issued the Demand Letter, Defendant was likely aware that Plaintiff was badly injured—the police report indicated that Plaintiff was found unresponsive on the scene and Porter later notified Defendant about Plaintiff's serious injuries and weeks-long hospitalization. *See* DMF ¶¶ 6–7, 18. Further, the Demand Letter claimed Plaintiff had suffered "significant" injuries (including injuries to his arm, hand, and leg) and incurred medical bills exceeding one million dollars. *Id.* ¶¶ 37–38.

However, while Defendant may have been aware that Plaintiff was seriously injured, the record does not show that Defendant ever received corroborating documentation quantifying Plaintiff's injuries. Although Rizio claimed Plaintiff incurred medical bills exceeding one million dollars, neither Rizio nor Plaintiff

---

[8] Defendant also states it requested medical records or authorization forms from Porter on September 22, 2014, and August 13, 2015. DMF ¶¶ 21, 46. Porter stated at her deposition that she could not recall Defendant ever requesting such documents from her on a call. *Id.* Because the undisputed facts show that Defendant requested medical records or authorization forms from Plaintiff in the form of letters and telephone calls to his counsel, the court need not determine whether Porter's inability to recall requests from Defendant on September 22, 2014, and August 13, 2015, gives rise to a disputed issue of material fact.

contemporaneously tendered documentation to corroborate this assertion. Without any such corroborating evidence, no reasonable juror could conclude Defendant acted in bad faith in rejecting Plaintiff's demand. *See Capitol Specialty*, 562 F. Supp. at 571–72 (granting summary judgment on plaintiff's implied duty to settle claim where defendant had no corroborating documents to quantify plaintiff's medical costs); *Spradlin*, 2019 WL 6481304, at *21 (same).

The court also rejects Plaintiff's argument that Defendant has failed to establish it conducted a reasonable investigation. Opp'n Br. at 17–18. Plaintiff does not dispute that Defendant made at least nine separate attempts to contact Plaintiff or his counsel to receive medical records or medical authorization forms. *See* DMF ¶¶ 44, 49, 52, 56. Given Plaintiff's undisputed unresponsiveness, and Defendant's consequent lack of access to Plaintiff's medical records, the court cannot conclude Defendant breached its duty to investigate Plaintiff's claim. *See Capitol Specialty*, 562 F. Supp. at 572–73 (finding insurer's investigation reasonable when it requested medical records and received no response); *Pureco v. Allstate Indem. Co.*, Case No. 2:18-cv-02079-SVW (FFMx), 2018 WL 7143624, at *9 (C.D. Cal. Nov. 17, 2018) (same).

Plaintiff further argues Defendant's attempts to contact him were insufficient, given that Defendant was "aware that [Plaintiff] was cognitively impaired and inhibited from communicating over the phone[.]" Opp'n Br. at 18. In Plaintiff's view, Defendant should have taken several other investigatory steps, including: "ask[ing] to meet with [Plaintiff or Porter]—in person or virtually," "sending a field agent to his home or either of the hospitals that housed him," or taking "statements from those known to be present at the scene" of the accident. *Id.* The court in *Spradlin* rejected similar arguments, finding that while such "information would add additional context ... it would not have cured the dispositive defect in the information available to Defendant ... [which was] the lack of medical records or billing records confirming the full extent of [plaintiff's] injury." 2019 WL 6481304, at *23. As in

*Spradlin*, the court finds that, while taking the additional investigatory steps Plaintiff suggests could have added additional context for Defendant in making its decision, it would not have addressed Defendant's preeminent concern—that is, the lack of corroborating medical documentation.

For the reasons set forth above, the court GRANTS Defendant's Motion as to Plaintiff's first cause of action.

### B.    Breach of Contract

Defendant next moves for summary judgment as to Plaintiff's second cause of action for breach of contract. Mot. Br. at 21. The Complaint claims "Defendant breached the terms and provisions of the Policy, including their duties to settle, and/or indemnify[.]" Compl. ¶ 22. The Complaint does not specify the terms Defendant allegedly breached. To the extent Plaintiff's claim is premised on a "breach of the duty to settle" theory, the claim fails because breach of contract is not the appropriate vehicle for a claim sounding in tort. *See PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 312 (1999) ("If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort[.]"). Further, the facts here show that Defendant provided a defense to Zabala and paid Plaintiff the $100,000 policy limit in partial satisfaction of the stipulated judgment resolving the Underlying Action. DMF ¶¶ 59, 68. Therefore, Plaintiff's breach of contract claim is duplicative of his first cause of action for bad faith. *See Spradlin*, 2019 WL 6481304, at *15 (granting summary judgment as to breach of contract claim duplicative of bad faith claim). The court, therefore, GRANTS Defendant's Motion as to Plaintiff's second cause of action.

/ / /

/ / /

/ / /

## **CONCLUSION**

For the reasons stated herein, the court GRANTS Defendant's Motion for Summary Judgment (Dkt. 26) in its entirety and VACATES the hearing set for February 9, 2024. This Order shall constitute notice of entry of judgment pursuant to Fed. R. Civ. P. 58. Pursuant to Local Rule 58-6, the court ORDERS the court clerk to treat this Order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.

Dated: January 31, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge