**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 20 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL MCGRANAHAN,<br><br>　　　　Plaintiff - Appellant,<br><br>　v.<br><br>GEICO INDEMNITY COMPANY,<br><br>　　　　Defendant - Appellee,<br><br>and<br><br>GEICO GENERAL INSURANCE COMPANY, DOES, 1 through 100, inclusive,<br><br>　　　　Defendants. | No. 24-1037<br><br>D.C. No.<br>5:22-cv-00125-FLA-kk<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted January 15, 2025
Pasadena, California

Before: GOULD, FRIEDLAND, and BENNETT, Circuit Judges.
Dissent by Judge FRIEDLAND.

---

　　* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellant Michael McGranahan appeals the district court's grant of summary judgment for Defendant-Appellee GEICO Indemnity Co. ("Geico") in a suit asserting breach of the implied covenant of good faith and fair dealing. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's grant of summary judgment. *See 3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1321 (9th Cir. 2020). We affirm.

1. California law implies a covenant of good faith and fair dealing in liability insurance policies. That implied covenant recognizes an implied duty to settle. *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014). An element for breach of the implied duty to settle is that the insurer "unreasonably failed to accept an otherwise reasonable offer within the time specified by the third party for acceptance." *Id.* at 426. The reasonableness of an insurer's conduct is a question of law where "evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Pinto v. Farmers Ins. Exch.*, 61 Cal. App. 5th 676, 689 (2021) (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001)). In evaluating whether an insurer unreasonably failed to accept a settlement offer, "the critical issue is the reasonableness of the insurer's conduct under the facts of the particular case." *Id.* at 687 (cleaned up) (quoting *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007)).

2.  Whether an insurer's decision was reasonable "is necessarily dependent on the amount of information at the insurer's disposal at the time of the settlement decision, when considering the totality of the circumstances." *Spradlin v. GEICO Indem. Co.*, 2019 WL 6481304, at *20 (C.D. Cal. Aug. 1, 2019).  Before receiving the demand letter, Geico attempted nine times to obtain McGranahan's medical records and bills—repeatedly stating that these documents were "essential" to its evaluation.  On July 20, 2015, Geico received McGranahan's demand letter with a response deadline of August 17, 2015.  Geico asked again for corroborating medical records or medical authorization forms on August 6.  Receiving no response, Geico called McGranahan's girlfriend Cindy Porter on August 13 to ask for an extension of the deadline.  Because Geico did not receive an extension, McGranahan's medical records, or a medical authorization form by the deadline,[1] Geico neither accepted nor rejected the settlement offer on August 17.  Because the medical records and bills were essential to evaluating McGranahan's settlement offer, Geico did not act unreasonably when neither accepting nor rejecting the time-limited settlement offer so that Geico could "continue to investigate, evaluate the claimant's claim, or consult with the insured

---

[1] In total, Geico made eighteen attempts to obtain McGranahan's medical records and bills before McGranahan's suit against Geico's insureds (the "Underlying Action").  Geico only received McGranahan's medical bills and records in 2017 during discovery in the Underlying Action.

party regarding the settlement offer." *See id.* at *19.

3. Although at the time the settlement demand was pending, Porter's statements and the redacted police report showed that McGranahan had been "badly injured," these statements and report "provided no quantifiable medical costs associated with the injury." *See Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*, 562 F. Supp. 3d 563, 572 (C.D. Cal. 2021) (cleaned up). The demand letter specifically claimed that McGranahan suffered "significant" injuries and incurred medical bills exceeding $1 million. Geico did not receive corroborating documentation quantifying McGranahan's injuries before the settlement offer deadline so Geico "had no way to estimate what [McGranahan's] past medical bills were at this time, even if [his] medical expenses were likely to be substantial." *See Spaldrin*, 2019 WL 6481304, at *20. Geico repeatedly explained that it did not have enough information to evaluate the settlement offer without McGranahan's medical records and bills.[2] Because Geico was unable to determine if its insureds' liability would exceed the policy limit without McGranahan's medical bills,[3] Geico

---

[2] *Integon Preferred Insurance Co. v. Saavedra* is inapposite here because the insurer there was able to determine that liability would exceed the $30,000 policy limit and admitted "that medical bills were not necessary" to evaluate the claim. *See* 2020 WL 11627347, at *2, 5 (C.D. Cal. May 28, 2020).

[3] This dissent states that "Geico's claim examiner wrote in her contemporaneous notes of her conversation with McGranahan's girlfriend that the policy limits 'are not going to be enough.'" Dissent at 2. But these notes were not definitive statements, and Geico's claim examiner accurately told Porter that "*if* her claims

did not act in bad faith when neither accepting nor rejecting the settlement offer.

4. The adequacy of an insurer's claim investigation is important when evaluating whether an insurer's conduct was reasonable, and an unreasonable failure to investigate "may be found when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages." *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879–80 (2000).

5. McGranahan contends that Geico should have taken other investigatory steps, including: "ask[ing] to meet with [McGranahan or Porter]—in person or virtually," "sending a field agent to his home or either of the hospitals that housed him," or taking "statements from those known to be present at the scene" of the accident. While taking these steps could have added additional context for Geico in making its decision, these steps would not have helped Geico to quantify the costs of McGranahan's injury. *See Spradlin*, 2019 WL 6481304, at *23. An insurance company is entitled to receive medical records and bills to aid it in evaluating a settlement offer.

6. By asking for corroborating medical records and bills or medical authorization forms ten times before the settlement offer deadline, Geico conducted an adequate investigation and "acted reasonably as a matter of law by

---

regarding Mr. McGranahan's injuries and hospitalization were accurate, GEICO's policy limit *might* not be enough to cover [the] medical bills."

seeking to obtain the necessary and missing information without delay." *See id.* at *24; *see also Shade Foods*, 78 Cal. App. 4th at 880.  Because the insurer was entitled to see medical bills and records before making a settlement, and the plaintiff, despite repeated requests, declined to provide the medical bills and records, we affirm the district court's grant of summary judgment adverse to plaintiff McGranahan.

**AFFIRMED.**

*McGranahan v. Geico Indemnity Co., et al.*, No. 24-1037

FRIEDLAND, Circuit Judge, dissenting.

FILED

MAR 20 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I think this case should be decided by a jury.

"Under California law, whether or not an insurer is guilty of bad faith is ordinarily a question of fact." *Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 517 (9th Cir. 1995). And, under the implied covenant of good faith and fair dealing, an "insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 401 (2000) (quoting *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941 (1976)); *see also Highlands*, 64 F.3d at 517.

Here, a jury could reasonably find that, even without reviewing McGranahan's medical records, Geico knew or should have known that there was a substantial likelihood that McGranahan's recovery would exceed his policy limit of $100,000. Geico knew from the police report that McGranahan was severely injured and unresponsive at the scene; indeed, Geico's claim examiner's notes observed that there could be a "possible fatality loss." From conversations with McGranahan's girlfriend, Geico further learned that McGranahan had spent two weeks in the ICU, then another five weeks in the hospital, then was transferred to a rehabilitation facility, and later received outpatient care. McGranahan's girlfriend also informed Geico that McGranahan had a tracheostomy, a MRSA infection,

- 1 -

severe head trauma, a broken jaw, and broken arms that required plates and screws. Given the extent of McGranahan's injuries and resulting medical care, a jury could reasonbly conclude that Geico did not need to see McGranahan's medical records to know that his damages would likely exceed $100,000. Indeed, Geico's claim examiner wrote in her contemporaneous notes of her conversation with McGranahan's girlfriend that the policy limits "are not going to be enough."[1] Thus, a jury could find that Geico "breache[d] its implied duty of good faith and fair dealing by unreasonably refusing to accept [McGranahan's] settlement offer."[2] *Kransco*, 23 Cal. 4th at 401.

Geico conceded at oral argument that there is nothing in the record suggesting that Geico questioned the veracity of McGranahan's girlfriend's descriptions of McGranahan's injuries. But even if Geico needed to corroborate

---

[1] The majority states that "Geico's claim examiner accurately told" McGranahan's girlfriend a more conditional statement than that expressed in the examiner's notes. Maj. at 4–5 n.3. But a jury could decide to believe the examiner's contemporaneous notes rather than her later declaration prepared for litigation.

[2] The majority emphasizes that "Geico neither accepted nor rejected the settlement offer" by the date that McGranahan's offer expired. Maj. at 3. But that is just another way of saying that Geico "refus[ed] to accept" McGranahan's settlement offer. *Kransco*, 23 Cal. 4th at 401. Allowing Geico to unilaterally extend the time to respond to settlement offers would permit Geico to escape its duty to settle and hinder "the important public policy of encouraging settlement of legal controversies." *Highlands*, 64 F.3d at 518 (quoting *Nw. Mut. Ins. Co. v. Farmers Ins. Grp.*, 143 Cal. Rptr. 415, 427 (Ct. App. 1978)).

her statements, repeatedly requesting McGranahan's medical records was not the only available means to do so. "An unreasonable failure to investigate amounting to . . . unfair dealing may be found when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages." *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 93 Cal. Rptr. 2d 364, 387 (Ct. App. 2000). Geico could have corroborated the extent of McGranahan's injuries by, for example, visiting him in person or speaking with witnesses at the scene of the accident.[3] Although those other options may have been more costly for Geico, the implied covenant of good faith requires Geico to "give at least as much consideration to the interests of the insured as it gives to its own interests." *Hedayati v. Interinsurance Exch. of the Auto. Club*, 283 Cal. Rptr. 3d 199, 207 (Ct. App. 2021) (quoting *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007)). Moreover, Geico does not appear to have taken any steps to investigate McGranahan's potential damages from his loss of income despite learning that he was self-employed. Thus, a reasonable jury could conclude that Geico breached

---

[3] The majority states that those steps "would not have helped Geico to quantify the costs of McGranahan's injury." Maj. at 5. But Geico did not need to precisely quantify McGranahan's damages—it only needed to determine whether McGranahan's damages were likely to exceed the policy limits. *See Highlands*, 64 F.3d at 517. And a jury could reasonably conclude that taking steps to investigate the extent of McGranahan's injuries would have helped Geico make that determination.

"the duty to investigate . . ., and that breach prevented [Geico] from settling the claim within policy limits." *Id.* at 208.

    For the foregoing reasons, I respectfully dissent.